UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>AGMAX, LLC, CHRIS YELEY, and<br>HAROLD BIRCH,<br><br>　　　　Defendants. | Case No.  05-cv-004223-JPG-PMF |

**MEMORANDUM AND ORDER**

　　　　This matter is again before the Court on a Motion (Doc. 75) for Contempt filed by Monsanto Company and Monsanto Technology LLC ("Monsanto").  Monsanto filed this (second) Motion for Contempt on July 21, 2014 for Chris Yeley's violation of this Court's April 27, 2007 Consent Permanent Injunction.

**Background**

　　　　This case began in December 2005, when Monsanto sued Defendant Yeley, his company AgMax, LLC, and his partner Harold Birch for Patent Infringement for Defendants' unauthorized access to and sale of Monsanto's patented seed technologies, including Roundup Ready® soybeans, Roundup Ready® corn, and YieldGard® corn. (Doc. 1).  Defendants denied those allegations.  (Doc. 9).  On January 18, 2006, Monsanto filed its Motion for Preliminary Injunction, and on January 26, 2006, this Court preliminarily enjoined Defendants from selling, offering to sell, accepting orders for, handling or delivering Monsanto's patent protected crop

seed technologies and Monsanto's DEKALB and Asgrow branded seeds ("seed technologies").[1] (Docs. 12 and 13).

On February 28, 2007, Monsanto filed its first Motion for Contempt. In that motion, Monsanto asserted violations of the January 26, 2006 Preliminary Injunction by Chris Yeley. *See* Docs. 59 and 60. On the same day, Monsanto also filed its Motion for Summary Judgment. *See* Docs. 61 and 62. On April 27, 2007, this Court entered its Consent Permanent Injunction. (Doc. 72). Like the Preliminary Injunction, the Permanent Injunction enjoined Defendants from utilizing, in any way, Monsanto's seed technologies. Specifically, the Permanent Injunction provided that

> Defendants are permanently enjoined from selling, offering for sale, brokering, marketing, transferring, handling, collecting orders, or delivering, directly or indirectly, for themselves or for any other person or entity the following:
>
> A. Any of Monsanto seed brands, including but not limited to, DEKALB, Asgrow, Midwest Seed Genetics, Inc., NC+, Trelay Seeds, Stewart Seeds, Inc., Heritage Seeds, Diener Seeds, Corn Belt Hybrids, Fontanelle Hybrids, Rea Hybrids, Inc., Stone Seed, Campbell Seed, Crow's Hybrid Corn Company, Sieben Hybrids, Fielder's Choice Direct, Moweaqua Seed Company, Heartland Hybrids, Trisler Sees, Inc. Specialty Hybrids, Kruger Seed Company, and Gold County Seed and any future seed brand, hybrid or variety marketed or licensed by Monsanto, for as long as those brands remain in the market; and
>
> B. Any seed brand, hybrid, or variety that contains a patented Monsanto crop trait, including but not limited to, the Roundup Ready®, YieldGard®, and Bollgard® traits for the duration of the affected patents.

---

[1] Monsanto is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology. After the investment of substantial time, expense, and expertise, Monsanto developed and patented plant biotechnologies that greatly enhance the performance and value of agricultural seed. Those biotechnologies are utilized by Monsanto in its own brands of seed and by other seed companies that are licensed by Monsanto to use those biotechnologies in their own brands of seed, including Pioneer, Great Lakes, Wyffels, NuTech, Syngenta/Northrup King, and CROPLAN seeds.

(Doc. 72). The Permanent Injunction was an unequivocal command of this Court prohibiting Defendant Yeley from transferring, handling and delivering of Monsanto's seed brands and Monsanto's seed technologies.

In support of the present Motion for Contempt, Monsanto submitted the Declaration of Justin Leifer who witnessed and recounted various acts by Defendant Yeley that constituted a violation of Consent Permanent Injunction. Monsanto also requested leave to conduct discovery to determine the full scope of Yeley's violations. This Court granted Monsanto's Motion for Leave to Take Discovery, over Yeley's objection. *See* Doc. 84. Yeley also opposed the present Motion for Contempt. (Doc. 84).

In his Memorandum in Response to Monsanto's Motion for Contempt and Motion for Discovery, Yeley made numerous representations to this Court, including that:

* "the investigator did not observe Yeley engaging in any conduct that could be deemed a violation of the Permanent Injunction";

* "two (2) innocuous trips by Yeley are inaccurately and incompletely described in Liefer's Affidavit";

* "Yeley's conduct does not constitute a violation of the Permanent Injunction";

* "Yeley did not have a financial interest in the seed on either occasion";

* "Yeley did not own the seed, sell the seed, or buy the seed, for himself or on behalf of anyone else";

* "Yeley was not paid to transport the seed"; and

* "Yeley's participation was limited to helping a friend who owned the seed in question".

Docs. 84 at 2 & 3. The Court notes that those statements were purportedly supported by an affidavit by Mr. Yeley, which was never submitted to this Court. Yeley never withdrew that Memorandum in Opposition or any of the representations thereon.

Monsanto undertook a lengthy and exhaustive investigation that again yielded irrefutable evidence that Yeley, again, knowingly and willfully violated this Court's injunction and Monsanto's patent rights. Faced with significant evidence that his statements and filings with this Court were proven false by Monsanto, Yeley, through his counsel, stipulated to numerous facts before this Motion could be heard. Indeed, those stipulated facts, set forth below, demonstrate that Yeley's (unsupported) Opposition to the present Motion and the representations therein were false and misleading.

### Findings of Fact

The parties stipulated to and Court makes the following findings of fact:

1. Chris Yeley knowingly and deliberately violated the Court's April 27, 2007 Injunction by offering for sale, selling, brokering, transferring, handling, collecting orders for, and delivering at least the following Monsanto seed brands in 2011, 2012, 2013 and 2014: DEKALB, Asgrow and Stone Seed.

2. Between 2011 and 2014, Chris Yeley knowingly and deliberately violated the Court's April 27, 2007 Injunction by offering for sale, selling, brokering, transferring, handling, collecting orders for, and delivering at least the following brands of soybeans and/or corn seed that contained Monsanto's patented seed traits: DEKALB, Asgrow, Stone Seed, Great Lakes Hybrids, Wyffels Hybrids, NuTech Seed, Syngenta/NK seed, and CROPLAN.

3. All the DEKALB, Asgrow, Stone, Syngenta/NK, and CROPLAN seed described above contained Monsanto's patented seed traits. Approximately ninety percent of Great Lakes and Wyffels seed described above contained Monsanto's patented seed traits.

4. Between 2011 and 2014, Chris Yeley knowingly and deliberately violated the Court's April 27, 2007 Injunction by offering for sale, selling, brokering, transferring, handling, collecting orders for, and delivering soybean seed that contained the following Monsanto patented seed traits: Roundup Ready® and Roundup Ready 2 Yield®.

5. Between 2011 and 2014, Chris Yeley knowingly and deliberately violated the Court's April 27, 2007 Injunction by offering for sale, selling, brokering, transferring, handling, collecting orders for, and delivering corn seed that contained the following Monsanto patented seed trait packages: Genuity® VT Double PRO® RIB Complete®, Genuity® VT Triple PRO® RIB Complete®, and Genuity® SmartStax® RIB Complete®.

6. In 2014, Chris Yeley knowingly and deliberately violated the Court's April 27, 2007 Injunction by offering for sale, selling, brokering, transferring, handling, collecting orders for, and delivering soybeans and/or corn seed containing Monsanto's patented seed traits to at least the following states: Illinois, Indiana, Iowa, Missouri, and Tennessee.

7. Chris Yeley has never obtained a permit or license to sell agricultural seeds in any of those states.

8. On an annual basis, at least in 2012, 2013, and 2014, Chris Yeley sold approximately 15,000 bags of corn seed that contained one or more of Monsanto patented traits and approximately 30,000 to 40,000 bags of soybean seed that contained one or more Monsanto patented traits.

9. The activities of Chris Yeley described above were done in the name Integ-Ag, Inc., an Illinois corporation.

10. From inception in January 2011, Chris Yeley was the sole decision maker of Integ-Ag, Inc. concerning its purchases and sales of products, including seed containing one or more Monsanto patented seed traits.

11. As of November 13, 2013, Chris Yeley was the sole officer and director of Integ-Ag, Inc.

12. During the relevant time period, Integ-Ag, Inc. employed one employee other than Chris Yeley.  That employee, Brian Shoemaker, was only responsible for assisting Chris Yeley with the deliveries described above, and the loading and unloading of seed and chemicals.

13. The statements made by Justin Liefer in his declaration Monsanto filed in support of its Motion for Contempt Against Chris Yeley for Violation of Consent Permanent Injunction are accurate, with the exception that Chris Yeley's truck described therein as a Ford F-350 was actually a Ford F-250.

14. The statements made by Defendant Yeley in his Memorandum in Response to Plaintiffs' Motion for Contempt and Motion for Discovery including that (a) "Yeley's conduct does not constitute a violation of the Permanent Injunction", (b) "Yeley did not have a financial interest in the seed" he sold, (c) "Yeley did not own the seed, sell the seed, or buy the seed, for himself or on behalf of anyone else", (d)"Yeley's participation was limited to helping a friend who owned the seed in question", and that (e) "Yeley has substantially complied" with this Court's Injunction, are all untrue.

**Sanctions**

In light of the foregoing, and the Court having granted (Doc. 114) the Motion for Contempt at hearing, the Court imposes the following sanctions against Defendant Chris Yeley:

1. The Consent Permanent Injunction entered by the Court on April 27, 2007, remains in effect;

2. Additionally, Defendant Chris Yeley individually, and by or through any company, including but not limited to Integ-Ag, Inc., is permanently enjoined from selling, offering for sale, brokering, marketing, transferring, handling, collecting orders, delivering or "consulting"[2] with growers regarding, directly or indirectly, for himself or for any other person or entity, the following:

   a) Any of Monsanto seed brands, including, but not limited to, those listed in the Court's April 27, 2007 Injunction as well as Channel, Deltapine, Hubner, Stewart, Gold Country Seed, Lewis, Jung and Rea Hybrids, and any future seed brands, hybrid, or variety marketed or licensed by Monsanto;

   b) Any seed brand, hybrid, or variety that contains a patented Monsanto crop trait or trait package, including but not limited to the Roundup Ready®, Roundup Ready 2 Yield®, Vistive® Gold Soybeans, Roundup Ready 2 Xtend soybeans, Genuity® VT Double PRO® RIB Complete®, Genuity® VT Double PRO®, Genuity® VT Triple PRO® RIB Complete®, Genuity® SmartStax® RIB Complete®, Roundup Ready® Corn 2, YieldGard® Corn Borer with Roundup Ready® Corn 2, YieldGard VT PRO, Yield Gard VT Rootworm/RR2®, YieldGard VT Triple®, Genuity® DroughtGard® Hybrids Corn, Genuity® SmartStax®, and any future traits or trait packages marketed or licensed by Monsanto or any other seed company; and

   c) Any soybean, corn, cotton, or wheat seed of any kind (including any "conventional" or "non-GMO" seeds) regardless of brand.

---

[2] In this litigation, Defendant Yeley previously took the position that he did not sell any seed but "consulted" with growers and "put them together" with seed companies so that his growers could, based on their collective volume of seed, enjoy discounts from the seed companies.  Yeley then received payment from the growers as a percentage of the discounts he saved them and/or received a fee or "override" from the seed retailers.  Defendant should be clear that this Order and Injunction prohibits him (or any company he is affiliated with) from, directly or indirectly, engaging in any such activities.

- 7 -

3.  Finally, Defendant Chris Yeley individually, and by or through any company, including but not limited to Integ-Ag, Inc., is also permanently enjoined from

    a) receiving any compensation, directly or indirectly, from the purchase, sale, consulting, brokering, pooling, advertising, negotiating, that is in any way related to any Monsanto seed brand, any seed that contains any Monsanto patented seed trait, and any soybean, corn, cotton, or wheat seed of any kind (including any "conventional" or "non-GMO" seeds);

    b) working for, directly or indirectly, any seed company that sells (i) any seed containing any Monsanto patented seed traits or seed trait packages or (ii) any soybean, corn, cotton, or wheat seed of any kind (including any "conventional" or "non-GMO" seeds).

**IT IS SO ORDERED.**

**DATED:** 2/2/2016

                                                    *s/J. Phil Gilbert*
                                                   **J. PHIL GILBERT**
                                                   **DISTRICT JUDGE**